# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

## SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | )     Case No. CR409-030 |
| | ) |
| WANDA WILLIAMSON | ) |
| | ) |
|      Defendant | ) |

## REPORT AND RECOMMENDATION

Before the Court in this wire fraud (18 U.S.C. § 1343)[1] case is

defendant Wanda Williamson's motion to dismiss the four-count

indictment against her. Doc. 18. Williamson is accused of stealing

money from her employer and of using interstate wire services for the

purpose of executing the fraudulent scheme. Specifically, the

indictment alleges that after Williamson stole certain checks issued to

---

[1] The statute, 18 U.S.C. § 1343, proscribes

devis[ing] or intending to devise any scheme or artifice to defraud, or for
obtaining money or property by means of false or fraudulent pretenses,
representations, or promises [and transmitting] or caus[ing] to be transmitted
by means of wire, radio, or television communication in interstate or foreign
commerce, any writings, signs, signals, pictures, or sounds for the purpose of
executing such scheme or artifice.

her employer by an out-of-state firm, she sent four e-mails to that firm as a part of her effort to conceal her theft and lull her employer into the belief that she was searching for the missing checks.  Doc. 1.  As it is undisputed that she sent the e-mails *after* she pocketed her employer's money, the basis for her motion is simple:  She never used any wire services to *take* the money, only to help cover up that fact.  At most, she contends, she may be guilty of a state law crime such as embezzlement, but not of violating § 1343.  Docs. 18, 21.

The government cites cases upholding § 1343 convictions upon the mere showing that a defendant mailed or wired a third-party in furtherance of a scheme to defraud the first-party victim.   Docs. 19, 25.  It does not matter, the government argues, whether such wirings occurred before, during, or after the actual fraudulent separation of the victim from his money, so long as the wiring occurred as *part* of the fraudulent method or process employed.   Docs. 19, 25.

At oral argument another issue arose, as illustrated by these hypotheticals:

1.  A embezzles B (her employer) out of $100,000 by skimming that amount from B's checking accounts.   To cover her

tracks, A uses the mails to send fake payment checks from C, a customer, to B. She also sends *one* misleading e-mail to C to lull B and C into not inquiring about the matter.

2. A embezzles B (her employer) out of $100,000 by skimming that amount from B's checking accounts. To cover her tracks, A uses the mails to send fake payment checks from C, a customer, to B. She also sends *thirty* misleading e-mails to C to lull B and C into not inquiring about the matter.

In both situations, B has been victimized once and has lost $100,000. Yet under the first scenario, A is indicted for only *one* count of wire fraud (one $100,000 loss, *one* e-mail), but under the second, she is indicted for *thirty* counts (one $100,000 loss, *thirty* e-mails). Does § 1343 authorize such a multiplication of counts? The Court asked the government counsel if 100 e-mails could support 100 counts and he replied "yes." Thus, each "covering" e-mail, the government contends, not only may be introduced as evidence in furtherance of the § 1343 crime, but also may be used to support a separate count -- even if the victim employer suffered only one loss.

## ANALYSIS

### A. Sufficiency of the Indictment

For the purposes of defendant's dismissal motion, the Court will

3

assume the facts alleged by the indictment to be true. *See, e.g., United States v. Fitapelli*, 786 F.2d 1461, 1463 (11th Cir. 1986) ("In judging the sufficiency of the indictment, the court must look to the allegations and, taking the allegations to be true, determine whether a criminal offense has been stated."). Employed by DavLong Business Solutions (DavLong) as a manager, Williamson's responsibilities included receiving payment checks from DavLong's customers and partners in payment for the use of DavLong's software. Doc. 1 at 1. During a 2007 - 2008 period she ran the payment checks through a secret bank account that she exclusively controlled. *Id.* at 1-2. She falsely endorsed the checks to that account, kept the funds for herself, then claimed to DavLong that the checks had never been received (explaining that they had never sent or had been lost in the mail). She is not alleged to have used any wire services to perpetrate this scheme.

Meanwhile, defendant falsely represented to DavLong's payors that she was leading DavLong's efforts to "locate" the missing checks. *Id.* at 2. Also, she "would send replacement checks purportedly from DavLong's customers to DavLong and would falsely represent to

DavLong on forged customer letterhead that such checks paid the amount owed in full, when in truth [the] checks paid significantly less than owed." *Id.* Again, she is not alleged to have used any wire services to do any of that. And no payor is alleged to have suffered any monetary loss.

Only when the indictment reaches Williamson's communication with Emdeon, a DavLong vendor in another state, is she alleged to have violated § 1343. In four e-mails Williamson "ask[ed] that Emdeon call her with update[s] on missing checks" (count one), noted "that she will update DavLong about missing checks" (count two), later "provided false information regarding missing checks" (count three), before finally representing that the "issue was resolved" (count four). *Id.* at 2-3. There is no allegation that Emdeon suffered any loss. The indictment thus relies on these four e-mails to support the four mail fraud counts.

This much, then, is undisputed: There is no allegation that Williamson used any wire service to take her employer's money. *See* doc. 1 (Indictment) ¶¶ 1-9. In fact, the indictment alleges only that she used the wire services (the four e-mails) to cover-up (hence, further) her

thievery. Nor is there any allegation that the payors suffered any monetary loss.

Defendant thus contends that while evidence of after-the-fact, "in furtherance" wirings -- including wirings to third parties (such as Emdeon) -- may be adduced to prove the original *non*-wire-based crime, the government *must* at a minimum show that a wiring caused the *victim's* loss, and not just that it went to cover it up after the fact. Docs. 18 & 21. Otherwise, there is no federal (§ 1343) crime alleged here, only a state law theft crime.

Williamson's argument thus goes to the indictment's sufficiency -- whether the facts as alleged are adequate to support the § 1343 crime alleged. The government principally relies on the analogous mail-fraud case of *United States v. Ashdown*, 509 F.2d 793, 800 (5th Cir. 1975) ("post-purchase mailings which are designed to lull the *victim* into a false sense of security, postpone inquiries or complaints, or make the transaction less suspect are mailings in furtherance of the scheme.") (emphasis added).[2] It has been said, in the mail-fraud statute context,

---

[2] The mail- and wire-fraud statutes are sufficiently similar that courts freely

that

> lulling letters are mailings that are designed to lull a victim into a false sense of security, to postpone inquiries or complaints, or to make the fraudulent transaction less suspicious. Because such mailings are designed to assist perpetrators in avoiding detection, they are considered to be mailings in execution of the fraudulent scheme for the purposes of § 1341. In other words, such mailings are not, strictly speaking, post-fruition mailings. Lulling letters act to continue the purpose of the fraudulent scheme by enabling the individuals involved to avoid detection.

42 AM. JUR. TRIALS 1 (*The Appeal of a Federal Mail Fraud Conviction*) (2009) (footnotes omitted). Here the indictment is vague about who the victim is. In its supplemental brief the government says that "[t]he *customers* whose checks were stolen are clear victims of that scheme -- it was their money fraudulently deposited by the defendant in her personal bank account." Doc. 19 at 3 ¶ 7 (emphasis added).

In any event, *United States v. Evans*, 473 F.3d 1115 (11th Cir. 2006), shows that pretty much any conduct involving the mails aimed at concealing or avoiding a fraudulent scheme's detection will support a

---

cite to cases under both for controlling principles. *See, e.g., United States v. Evans,* 473 F.3d 1115, 1119 n. 3 (11th Cir. 2006) ("Because '[t]he 'scheme or artifice to defraud' and 'for the purpose of executing' language in the mail and wire fraud statutes are construed identically,' *United States v. Hasson,* 333 F.3d 1264, 1271 n. 7 (11th Cir.2003), we borrow freely from cases construing [18 U.S.C. §] 1341.").

mail- or wire-based fraud charge. *See id.* at 1119-20 (under the "lulling doctrine," letters designed to conceal a fraud, by lulling a victim into inaction, constitute a *continuation* of the original scheme to defraud; i.e., when the scheme includes not only obtaining the benefit of the fraud but also delaying detection of the fraud by lulling the victim after the benefit has been obtained, the scheme is not fully consummated, and does not reach fruition, until the lulling portion of the scheme concludes; hence, use of the mails after the money is obtained may nevertheless be for the purpose of executing the fraud).

Williamson seemingly argues that it is not alleged in the indictment that she schemed to steal DavLong's money and send e-mails as part of that scheme, but instead that she simply resorted in ad hoc fashion to the wires (through e-mails) after the fact -- i.e., after completing the original, state-based theft crime. But the case law shows that the wiring need not be an essential part of the scheme. In fact, adding on a wire-use component to advance a non-wire-based fraud scheme will suffice, so long as it is reasonably contemplatable that at some point interstate wire services of some sort will be used:

The Supreme Court has held that certain mailings sent *after* the defendants have obtained the fraudulently sought funds or services may fall within the ambit of the mail fraud statute. *See United States v. Sampson*, 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962) (holding that mailing element was satisfied where the defendants sent letters to fraud victims in an attempt to convince them that the promised services would be performed even though mailings were sent after victims' money had been obtained). Subsequent mailings that are "designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely," fall within the ambit of the mail fraud statute. *See United States v. Lane*, 474 U.S. 438, 451-52, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986); *see also United States v. Helms*, 897 F.2d 1293, 1297 (5th Cir.1990) (holding that subsequent mailings "which are designed to lull the victim into a false sense of security, postpone inquiries or complaints, or make the transaction less suspect are mailings in furtherance of the scheme").

*United States v. Strong*, 371 F.3d 225, 231 n. 3. (5th Cir. 2004).

The above precedent speaks of lulling the *victim* by post-theft mailings or wirings, which are reasonably contemplatable in a business setting like Williamson's where the phone and e-mails are putatively indispensable to performing her job. But other case law shows that the controlling feature is the wiring or mailing that is part -- even if only in an incidental sense -- of a scheme to defraud or cover up the fraud, and not the specific person to whom the message is specifically directed. *See,*

*e.g.*, *United States v. Manges*, 110 F.3d 1162, 1169 (5th Cir. 1997) ("It may be sent by a victim of the plot or an innocent third party, so long as the mailing is incident to an essential part of the scheme, or a step in the plot") (alterations omitted) (quoting *Schmuck v. United States*, 489 U.S. 705, 710-11(1989)); *see also United States v. Powers*, 168 F.3d 741, 746 (5th Cir. 1999); *United States v. Shryock*, 537 F.2d 207, 209 (5th Cir. 1976). And "there is no requirement that the mailings [wirings] precede the fraud." *United States v. Triumph Capital Group, Inc.* 260 F.Supp.2d 444, 460 (D.Conn. 2002) (quotes and cite omitted).[3]

One could argue that such indictments must allege that the use of the wires or mails must have been contemplated as part of the

---

[3] An encyclopedist collected cases on this point:

*See United States v. Lane*, 474 U.S. 438, 453 (1986) (holding mailings that attempt to cloak scheme in aura of legitimacy after the fact are covered by statute); *United States v. Masten*, 170 F.3d 790, 796 (7th Cir. 1999) (finding actions taken after fraudulent scheme intended to reassure victims meet this element); *United States v. Lack*, 129 F.3d 403, 407-09 (7th Cir. 1997) (same). *But see United States v. Hartsel*, 199 F.3d 812, 818 (6th Cir. 1999) (holding that defendant's receipt of mailed bank statements from an account established to hold embezzled funds did not satisfy the "use of mails" requirement of mail fraud statute because statements served no "useful step, purpose or role in furthering the scheme").

46 AM. CRIM. L. REV. 813 (Spring, 2009).

fraudster's *original* scheme. Some passages in *Sampson* and its predecessor cases might be read to support that principle. *See Sampson*, 371 U.S. at 81. Later case law development, however, illuminates this somewhat subtle nuance:

> Although there is no "automatic rule that a deliberate, planned use of the mails after the victims' money had been obtained can never be 'for the purpose of executing' the defendants' scheme," *Sampson*, 371 U.S. at 80, courts have routinely held that "a mailing sent after the object of a scheme has been accomplished is not sufficiently closely related to the scheme to support a mail fraud conviction." [*United States v. Lebovitz*, 669 F.2d 894, 896 (3d Cir.1982)]. The one recognized *exception* to this rule is that "[m]ailings occurring after receipt of the goods obtained by fraud are within the statute," and may be considered to be "in furtherance" of the scheme, "if they 'were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place.'" *United States v. Lane*, 474 U.S. 438, 451-52, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) (quoting [United States v. Maze, 414 U.S. 395, 403, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974)]).

*United States v. Newmark*, 2008 WL 927961 at * 13 (E.D. Pa. Apr. 4, 2008) (unpublished) (emphasis added).

The bottom line, then, is whether the use of interstate wires was either an essential or incidental part of the fraudulent scheme. Hence, Williamson may have committed simple criminal conversion,

embezzlement, larceny, or some other form of state theft crime the moment she diverted and deposited checks payable to DavLong into her own account, but she crossed over into § 1343 territory when she used interstate wire transmissions (the internet e-mails) to cover it up and thus made the e-mails at least an incidental part of her scheme to defraud her employer. Only if the e-mails spoke of something unrelated to the original embezzlement would she have a winning, indictment-insufficiency argument here. Again, the case law makes no distinction between whether the perpetrator's concealment efforts (using wire services) were directly aimed at the victim or a third party, so long as the ultimate intent was to deter the victim from discovering the fact that he has been victimized, or if the wires were used in some way to further the fraud by concealing it. Here that has been adequately alleged. The Court should thus deny Williamson's motion to dismiss based on indictment-insufficiency grounds.

## B. Multiplicity

The alleged facts show that this case fits the second multiplicity hypothetical above. Williamson embezzled DavLong and DavLong

suffered a series of losses, but the government has elected to indict Williamson on *one* loss. The indictment's four counts are directly founded on her four *e-mails* to a third party. Presumably, had Williamson sent 100 e-mails there would be 100 counts. The issue, then, is whether the indictment is impermissibly multiplicitous.[4]

"An indictment is multiplicitous if it charges a single offense in more than one count." *Williams,* 527 F.3d at 1241. Such an indictment "violates the principles of double jeopardy because it gives the jury numerous opportunities to convict the defendant for the same offense." *Id.* It "not only subjects the defendant to numerous sentences for one offense, but also prejudices the defendant and confuses the jury by suggesting that not one but several crimes have been committed." *Id.* (quotes, cite and alterations omitted); *United States v. Miller*, 156 F. App'x 281, 290 (11th Cir. 2005); *United States v. Langford*, 946 F.2d 798,

_____

[4]    "Like duplicity, multiplicity in an indictment does not require the entire indictment to be dismissed; instead, the appropriate remedy for multiplicity calls for consolidating a multiplicitous charge into one count, or issuing special instructions to the jury. Thus, if the Indictment in this case were indeed multiplicitous, Defendant's requested dismissal would not be the appropriate way to remedy that error." *United States v. Bobo,* 2007 WL 962978 at * 4 (N.D.Ga. Feb. 20, 2007) (unpublished) (cite omitted).

802 (11th Cir. 1991) ("Multiplicity is the charging of a single offense in more than one count.").

"The general test for determining whether multiple charges constitute but one offense is whether each charge 'requires proof of an additional fact which the other does not.' *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932)." *United States v. Fiallo-Jacome*, 784 F.2d 1064, 1066 (11th Cir. 1986). So "[i]f one crime could be proven without necessarily establishing the other, then there are two separate offenses." *United States v. Ferguson*, 478 F.Supp.2d 220, 234 (D.Conn. 2007).[5]

---

[5] A recent case provides an example of the *Blockburger* test:

Here, [the defendant] has been charged with one count of wire fraud and one count of theft of government funds. *See* 18 U.S.C. § 1343; 18 U.S.C. § 641. The elements of wire fraud are "(1) the formation of a scheme or artifice to defraud, and (2) use of the wires in furtherance of the scheme." *United States v. Brown*, 459 F.3d 509, 518 (5th Cir.2006). Theft of government funds does not require proof of the use of wires in furtherance of the scheme, but it does require proof that the stolen funds are federal funds. *See United States v. Barnes*, 761 F.2d 1026, 1033 (5th Cir.1985). Because each offense requires proof of an additional fact, the inclusion of both counts in the indictment does not violate the Double Jeopardy Clause.

*United States v. Dowl*, 2008 WL 4544356 at * 3 (E.D.La. Oct. 7, 2008) (unpublished); *see also Ferguson*, 478 F.Supp.2d at 233-34 (although same conduct by the defendants underlied the securities fraud and false statement charges, those charges were not multiplicitous for double jeopardy purposes; to establish securities fraud,

the government had to prove that defendants' allegedly fraudulent actions occurred in connection with the purchase or sale of stock and that the defendants used interstate commerce in furtherance of their fraudulent acts; the false statement charges did not require proof of either of those elements, but rather, required the government to prove that the defendants made a material false statement to the Securities and Exchange Commission in a mandatory filing).

Still, the answer to this question is not always clear. *See* 41 AM.JUR.2D (*Indictments and Informations*) § 205 (May 2009) ("Whether or not an aggregate of acts constitutes a single course of conduct and therefore a single offense may not be capable of ascertainment from the bare allegations of an information and may have to await the trial on the facts"). One question courts ask "is whether the facts underlying each count were intended by Congress to constitute separate 'units' of prosecution." *United States v. Regensberg*, 604 F.Supp.2d 625, 629 (S.D.N.Y. 2009) (quotes and cite omitted). "The 'unit of prosecution' test looks at congressional intent and asks what Congress has made the allowable unit of prosecution under a statute which does not explicitly give the answer." *United States v. Jones*, 2007 WL 2301420 at * 9 (N.D.Ga. Jul 18, 2007) (unpublished) (quotes, cite and alterations omitted). "What is the allowable unit of prosecution is a matter within the discretion of Congress, subject only to constitutional limitations." *Id.* One commentator provides some illustrative guidance:

> If several women are transported in the same trip and in the same vehicle in interstate commerce for purposes of prostitution, only one crime has been committed under the Mann Act, since the essence of that statute is the use of a facility of interstate commerce. As there is only one crime the charge should be made in a single count, and so separate counts for each woman transported would be multiplicitous.
>
> On the other hand, if two aliens are smuggled into the United States in a single trip, a separate offense has been committed with regard to each, since the statute imposes a separate punishment for each alien involved. In this case a separate count should be used for the smuggling of each alien, and a single count referring to more than one alien would be duplicitous.
>
> Thus at its core, the issue of duplicity or multiplicity is one of statutory interpretation.

1A WRIGHT & MILLER, FED. PRAC. & PROC. CRIM. 3D § 142 (*Misjoinder, Duplicity, and Multiplicity*) (2009) (footnotes omitted).

In a weapons-possession case, for example, the simultaneous possession of several weapons constitutes only one offense under 18 U.S.C. § 922(g). *Id.* But if the evidence establishes that the defendant, at some point in the period covered by the indictment, separated one of the weapons and possessed that weapon at a different location or received it a different time than the other weapons, then multiple § 922(g) counts are authorized. *Id.*; *see also United States v. Wendehake*, 2006 WL 3498911 at * 2 (S.D.Fla. Dec. 4, 2006) (unpublished) ("The Defendant can be charged with the separate offenses of receiving child pornography and possessing child pornography, as long as he is not being charged with receiving and possessing the same images in both counts of the Indictment. Evidence of *separate* receipt and *separate* possession can be charged in different counts of the same Indictment depending upon the facts of the case.") (emphasis added).

It has been held that where one scheme or artifice to defraud involves multiple wire transmissions, each wire transmission may form the basis for a separate count of wire fraud. *Williams,* 527 F.3d at 1241. But in *Williams*, an indictment charged multiple counts of wire fraud

based on seven separate wire transmissions made on different dates and in different *amounts* of federal funds into an account controlled by the defendant. The charges were not multiplicitous because different amounts of money supported each count. *Id.* at 1242-43.

Similarly in *Langford,* a securities fraud case, the court held that to avoid multiplicity each count of indictment must be based on a separate purchase or sale of securities. Hence, each count had to specify a false statement of material fact in connection with that purchase or sale (hence, a separate transaction was linked to each count). 946 F.2d at 804.

The litmus test that might be said to surface from such cases, then, is whether there has been a transaction involving an act (sending a fraudulent communication) in pursuit of some sort of payoff -- getting a quantity of money or some other form of property, wealth, or benefit. *See, e.g.*, *Regensberg*, 604 F.Supp.2d at 630 (in a securities fraud case fraudulent *transactions* involving *different securities* -- even if made with the intent of furthering a single overall conspiracy -- may establish the basis for separate counts of securities fraud). The logic employed in

*Williams* underscores that core dynamic: each additional fact (e-mail) must further the fraudulent taking of a *different* amount of money with it (a separate "transaction"). This also can be seen in the above-cited gun and child-porn possession cases, where the crime itself involves *possession*, so possessing the same gun or pornography at different times/places ("transactions") can support separate counts of possession. Each instance involved a "benefit" -- the possession of the prohibited item in a different place/time.

The unit of the crime here, then, would be each fraudulent act as linked to a specific transaction-yielding benefit to the wrongdoer. *Cf. United States v. Sebero*, 2009 WL 720953 at * 2-3 (E.D.Wash. Mar. 16, 2009) (unpublished) (defendant's wire fraud was completed when his scheme to defraud caused some benefit to be wired to him; he defrauded a medical examiner for disability benefits twenty-seven years earlier; since his wire fraud was not completed until he received the benefit in the mail, his statute of limitations did not begin to run twenty-seven years previously). Thus in this case, where multiple e-mails were sent in furtherance of *one* amount of money defrauded from DavLong, only one

fraudulent transaction yielding a benefit may be said to have occurred, so only one count is supported. Hence, the motion to dismiss would be granted as to 3 of the 4 counts if the case law is read narrowly enough to preclude recognition of a separate "lulling benefit" from each e-mail. If not, then the motion would be denied outright.

Even if the approach most favorable to Williamson were employed, it would be problematic given the inconsistent precedent in this circuit. In *United States v. Davis*, 730 F.2d 669 (11th Cir. 1984), the defendant was charged with making false statements to a federally insured bank in several different documents, all in violation of the bank fraud statute, 18 U.S.C. § 1014. *Id.*, 730 F.2d at 671. The documents were designed to procure a single loan (hence, one benefit). *Id.* The Eleventh Circuit held that the different counts in the indictment were not multiplicitous because different documents were involved and thus different proof (one layer of evidence for one document, another for the other) was required as to each count. *Id.* at 672.

But what about the different-benefit litmus test described above? That inconsistency went unaddressed. It was acknowledged in *United*

*States v. Smith*, 231 F.3d 800, 815 (11th Cir. 2000). Confining *Langford's* single-benefit concept to "securities cases" (because one fraud fed by a thousand fraudulent solicitations could lead to a thousand counts), the *Smith* court held that it was not multiplicitous to charge *two* counts of 42 U.S.C. § 1973i(c) vote fraud, for the fraudulent counting of *one* absentee vote, where one count charged the using of false information on an *application* for an absentee ballot, while another count charged using false information on an *affidavit* to get that same ballot. The application and the affidavit were different documents serving distinct purposes, so the two counts required different proof. *Smith*, 231 F.3d at 815 (rejecting defendants' contention that the allowable unit of prosecution should include all steps preparatory to casting a ballot, regardless of the number of pieces of false information supplied).

Hence, the *"Davis/Smith"* reasoning would support a non-multiplicity ruling here. This rationale can be seen in other Eleventh Circuit opinions, too. For example, possessing different substances at the same time can support multiple counts. *United States v. Thompson*, 171 F. App'x 823, 289 n. 2 (11th Cir. 2006) ("the simultaneous possession

of different controlled substances constitutes separate offenses under 21 U.S.C. § 841(a) for which multiple sentences may be imposed"). The *Smith* court was aware of this divergence in reasoning. It relied on *Davis* and pointed out that *Davis* preceded *Langford* so if the two conflict then *Davis* controls under the intra-circuit conflict doctrine. 231 F.3d at 815 n. 16. The *Smith* court thus was unconcerned whether two fraudulent acts yielding but one benefit should limit the indictment to just one count.

Here the only "additional fact" for the several wire fraud counts is each separate, "post-loss" e-mail. Again, only *one* loss and thus one benefit to Williamson is alleged. And there is no allegation that she used any wire facility to steal DavLong's money in the first place. *See* doc. 1 ¶¶ 1-9. The indictment alleges only that she used the wire services (e-mail) to cover-up her embezzlement of that money.

Yet, the "in furtherance" cases show that using a wire service need only involve some way, before or after the fraud, of furthering the fraudulent act, including covering it up. So evidence of multiple e-mails can be admitted to support one count of wire fraud where one "benefit"

(chunk of money) is involved, and under *Smith* each e-mail can, on its own, be deemed a unit of the wire fraud crime -- i.e., one e-mail plus one cash or other benefit constitutes one count of wire fraud. A few e-mails, then, can support a few additional counts, but perhaps 1000 e-mails cannot support 1000 counts. (The *Smith* court did not deign to suggest where the line is drawn.) *Smith*'s bottom line is whether the government must prove something different with each e-mail. Here the government can prove that each e-mail was sent on a different day and said something different. That is enough. And *Smith* says that *Davis's* rationale applies here, not *Langford*'s.

Accordingly, all of the counts here are legally supported under *Smith*'s rationale, though not under *Langford*'s. In that *Smith* controls under the prior-precedent rule on which *Smith* relied, Williamson's indictment is not multiplicitous. Thus, Wanda Williamsons' motion to dismiss (doc. 18) should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this __25th__ day of June, 2009.

/s/ G.R. SMITH
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**